ERVIN, Judge,
dissenting.
I am of the view that the Public Employees Relations Commission (PERC) erred in concluding that appellant, Pensacola Junior College Faculty Association (the union), waived its right to bargain in the case at bar. I would therefore reverse on this basis and remand for further proceedings consistent with the hearing officer’s recommended order of May 9, 1990.
Sometime prior to May 8, 1989, Pensacola Junior College (college) decided to implement a long-standing suggestion that the Skill Center for Independent Living (SCIL) program be expanded from ten to twelve months. Acting upon the suggestion, SCIL Director Linda Saylor and the college on May 8, 1989 submitted a budget, including the proposed expansion for the 1989-90 academic year, to the Florida Division of Blind Services (the Division), which funds the SCIL program. The budget also contained a proposal that Bienvenido Bazo’s position, communications instructor, be retitled “training' specialist” and funded for twelve months, rather than the current ten.
Because of lack of funds, the Division rejected the proposed budget. The college then submitted a revised budget, reducing the training specialist position to a part-time position (30 hours per week) for twelve months. Although Bazo was informed on June 8, 1988 of the upcoming program changes and told that he would be expected to become proficient in certain skills required for the new position, it was not until June 19, 1989 that Saylor met with Bazo and offered him a twelve-month, part-time contract for the training specialist position for the 1989-90 academic year. Bazo specifically asked whether he would receive certain fringe benefits, which were not ordinarily given to part-time employees, and Saylor informed him that she would attempt to secure the benefits for him.
Shortly thereafter, Bazo discussed the SCIL program restructuring with the president of the union, Dr. Margaret Sielski. She contacted the college’s chief negotiator, Dr. Dennis Golladay, to clarify the college’s position. As a follow-up to that meeting, Dr. Golladay wrote a memorandum to Dr. Sielski on June 21, 1989, reiterating that Bazo had been offered a twelve-month contract for 30 hours per week, indicating also that the Board of Trustees would consider the continuation of fringe benefits to Bazo. Because Dr. Sielski was leaving town, she took no further action other than transferring Bazo’s ease to the union’s incoming president, Jill Scroggs. Scroggs first met with Dr. Golla-day on July 20, 1989, and then with the union’s attorneys who advised her that the Board of Trustees had scheduled a meeting for July 25 to determine whether Bazo would be given the requested fringe benefits. On July 25, 1989, Scroggs wrote to Dr. Golladay, asking that the status quo be maintained until an opportunity was furnished for the parties to bargain regarding *257 the proposed changes in Bazo’s hours, working conditions, or wages.
During the period of informal discussions between the bargaining representatives of the college and the union over Bazo’s position, the college nonetheless went forward in effectuating the proposed changes. The college president accepted the contract with the Division on June 22, 1989, and the Division signed the SCIL grant on June 28, 1989. Thereafter, on July 25, 1989, the Board approved the SCIL budget, which funded the training specialist position on a part-time basis but granted Bazo fringe benefits. On July 31, 1989, the college formally offered Bazo a twelve-month, part-time contract with fringe benefits, which he declined.
The union then filed an unfair labor practice charge against the college, alleging violations of Sections 447.501(l)(a) and (c), Florida Statutes (1987), which prohibit unilateral modification of the terms and conditions of employment of a bargaining unit position. Following a hearing and a hearing officer’s recommended order, PERC entered a final order dismissing the charge, concluding that the union had waived its right to bargain over the changes in Bazo’s position by failing to demand bargaining prior to the July 25 meeting, and, as a result, the college did not violate section 447.501. I cannot agree with the majority’s apparent approval of PERC’s conclusion. I would instead hold that PERC erred in finding that the circumstances of this case clearly establish waiver on the part of the union.
In order to better understand the procedural history of this case I think it would be helpful to set out in some detail the findings made both by the hearing officer and by PERC. In his initial recommended order, the hearing officer found that because Bazo’s annual contract expired on May 5, 1989, the college was not required to bargain over its decision to eliminate the position, but that it was required to provide the union with notice and opportunity to bargain over the implementation of its decision if it had an impact on the wages, terms, and conditions of the employment of a bargaining unit employee. The hearing officer further found that the union’s letter of July 25, 1989 to the college requesting that the status quo be maintained was not a proper request to bargain over the impact of the decision to eliminate the position, but was rather one seeking only to bargain over the college’s decision to eliminate the position; consequently he concluded that the union had waived its right to bargain over the impact of the decision to eliminate the position.
Despite finding waiver, based on the wording of the union’s request to bargain, the hearing officer nonetheless found that the college had a duty to bargain with the union over its decision to transfer bargaining unit work to a nonbargaining unit employee. Therefore the union could not be deemed to have waived its right to so bargain because, although the union received notice of the college’s decision to transfer work in late June, the college’s decision to so act had been made long before its approval of the final budget on July 25, 1989; hence it would have been futile for the union to request bargaining.
In reviewing the recommended order, PERC decided that the hearing officer had erroneously assumed that the effect of the college’s decision to retitle Bazo’s position was to eliminate his former position from the bargaining unit. It found instead that the position, whether titled “communication instructor” or “training specialist,” was properly within the bargaining unit, and thereupon remanded the case to the hearing officer for further findings consistent with its order.
Following remand, the hearing officer, in an order dated May 9, 1990, determined that the college did not remove work from the bargaining unit, and was not obligated to bargain with the union on its decision to retitle the position, but that because of PERC’s finding that the position was properly within the bargaining unit, the college’s alteration of the conditions of employment of the position was unlawful in that the college had failed to bargain over the changes. The hearing officer next found that the union did not waive its right *258 to bargain over these changes because the college’s decision to alter the working conditions of the position had already been made by the time the union received notice of the same in late June; therefore, it would have been futile for the union to request bargaining.
Upon review of the second recommended order, PERC approved essentially all the findings of the hearing officer, except that relating to waiver, deciding instead that the union had received sufficient notice of the college’s proposed action to eliminate Bazo’s former position, and, as a result, the union’s failure to make a timely demand to bargain over the decision to change the wages and hours of the position constituted “a clear and unmistakable waiver of any right it may have had to bargain over those changes.” PERC rejected the hearing officer’s finding that it would have been futile for the union to demand bargaining, pointing out that the Board of Trustees was still free to increase the wages and hours of the new position from other sources, notwithstanding that the employment contract was signed in June, noting that the Board at its July 25 meeting had supplemented the position’s wages with fringe benefits derived from the college’s own budget in response to Bazo’s request.
Initially, I agree with PERC’s determination of the futility issue, which appears to be a blend of law and facts. Final approval of the college’s decision to reduce Bazo’s wages and hours could not have been achieved until the Board's action at the July 25 meeting. Thus, I cannot agree with the union that it would have been a futile gesture for it to request bargaining after the so-called fait accompli, which apparently occurred when the college accepted the Division’s contract in June 1989, making Bazo’s position part-time. PERC’s additional finding that the union waived its right to bargain by not making a formal request for same before the Board’s meeting of July 25 is, however, in my judgment, far more troubling and appears not to be supported by competent, substantial evidence.
It is clear from the record that during the informal communications between Siel-ski and Golladay, and later between Scroggs and Golladay, which occured before July 25, 1989, the union had placed the college on notice that it considered Bazo’s former position to be within the bargaining unit. Although Scroggs indicated that she did not remember whether she had specifically informed Golladay that the union was protesting the changes in Bazo’s hours, wages, and conditions, it is nonetheless apparent that prior to July 25 the union had informed the college that it considered the question of the elimination of Bazo’s position to be within the terms of the bargaining agreement relating to retrenchment, which required the college to request negotiations with the union if, during the period of the agreement, the college foresaw the need to reduce the number of faculty members.
As apparently found by the hearing officer, and never rejected by PERC, the college assumed that the retrenchment article applied only to faculty members on continuing contract and not to those such as Bazo who were on annual contract. This finding is supported by both the testimony of Scroggs and Sielsky, as well as a memorandum by Golladay, summarizing a discussion between him and Scroggs on July 20, 1989, in which he stated the college’s position that the retrenchment provisions of the bargaining agreement did not apply to Bazo’s employment contract, in that Bazo was on annual contract, and his contract had already expired. The college therefore apparently considered it unnecessary to bargain over its decision to eliminate the position.
As previously stated, PERC, in its initial order, tacitly rejected the college’s contention that Bazo’s position was not subject to bargaining. PERC determined instead that both the communication instructor or training specialist positions were in the bargaining unit. Based upon the content of the dialogue which had transpired between the college and the union before the Board’s approval of the college’s budget on July 25, the record clearly establishes the union’s expression of concern to the college over *259 the decision to eliminate a position which it believed to be within the bargaining unit. Although the record does not reflect a specific request to bargain, formal or otherwise, by the union before July 25, under the provisions of the retrenchment article, which PERC tacitly found applicable by reason of its determination that Bazo’s position was within the bargaining unit, it was not the union’s but the college’s duty to request negotiations with the union over the impact of any proposed decision to reduce the work of a bargaining unit employee.
PERC’s finding of waiver moreover appears to be at variance with Article X, section 10.01 of the bargaining agreement, providing that the union and the Board may attempt to settle grievances through informal discussion, before a formal grievance procedure is initiated, which must be in writing. I have not otherwise found any provision in the agreement, or in any statute, administrative rule or order, or judicial decision supporting the view that a party is deemed to have waived his or her right to bargain based solely upon the fact that a request for bargaining is not in writing. To the contrary, PERC has ruled that the totality of the circumstances must be evaluated to determine whether the union waived its right to negotiate, not just the specific content of the particular written or oral demands to negotiate. Leon County Police Benevolent Ass’n, Inc. v. City of Tallahassee, 8 F.P.E.R. para. 13400, at 722 (Oct. 8, 1982), aff'd, 445 So.2d 604 (Fla. 1st DCA 1984). Indeed in a different context, PERC has stated it would “not elevate form over substance and allow only formal notice [by the employer] to constitute effective notice where the record indicates that the employee organization had actual notice of the proposed change and was afforded a significant opportunity to request negotiations.” Amalgamated Transit Union, Local 1596 v. Orange-Seminole-Osceola Transp. Auth., 12 F.P.E.R. para. 17134, at 275 (Mar. 21, 1986). Yet, this is precisely what PERC has required of the union in the case at bar: that it make a formal request to bargain before the Board meeting of July 25, 1989 — although it was not required to do so by the terms of the bargaining agreement — despite the college’s knowledge of the union’s contentions that Bazo’s position was in the bargaining unit.
The following comments by PERC regarding waiver by inaction are particularly applicable to the instant case:
Without question, an employee organization can effectively waive its collective bargaining rights through inaction after it is placed on notice of a proposed change. Most often inaction is demonstrated by a failure to make an effective demand to negotiate. Waiver by inaction is an affirmative defense which must be established by a preponderance of the evidence by the employer. However, this defense is not established merely by proof that the magic words “we request to bargain over the change” were not used. Rather, for inaction to ripen into a “clear and unmistakable” waiver, consideration of all the circumstances must reveal that the Union’s conduct is such that the only reasonable inference is that it has abandoned its rights to negotiate over the noticed change.
City of Tallahassee at 725 (citations and footnotes omitted). The above rule is consistent with judicial case law. In State Department of Environmental Regulation v. Puckett Oil Co., 577 So.2d 988, 993 (Fla. 1st DCA 1991), this court emphasized that waiver based upon the passage of time requires clear evidence that the party against whom waiver is asserted “receive notice informing him or her of the requirement of taking certain action within a specified period of time, and such party delays for a protracted length of time in taking the required action.”
In applying PERC’s own nonrule policy to the instant case, it cannot be said, after a consideration of all the circumstances, that the union’s conduct was such that one could only reasonably infer that the union had abandoned its right to negotiate over the proposed changes in Bazo’s working conditions, hours, or wages, because, as previously stated, many of the parties’ informal discussions involved the question whether Bazo’s position was within the bar *260 gaining unit, with each party adopting opposite conclusions.
Additionally, the college never provided adequate notice to the union that a response after July 24 would be considered untimely. The record is clear that the union had notice of the changes affecting Bazo’s work schedule by June 21, 1989, when Dr. Golladay sent a memorandum to Dr. Sielski describing the new program. But there is no explicit mention anywhere in the record that the union was required to respond before the Board’s meeting of July 25, 1989. Dr. Golladay’s memorandum of June 21 merely stated, “Dr. Atwell is requesting Board permission to continue the funding of Mr. Bazo’s fringe benefits.” Nor is there any indication that the meeting at which fringe benefits would be discussed might also constitute a deadline for a bargaining request.
As in City of Tallahassee, the totality of the union’s conduct before the Board’s final action implementing the changes in Bazo’s contract manifests its intention to negotiate. Therefore, consistent with PERC’s order in City of Tallahassee, before a finding of waiver could be sustained, it was essential for the college to inform the union that its failure to make a formal demand to bargain before the Board’s action of July 25, 1989 would be unsatisfactory. Because the college was required by the bargaining agreement to request negotiations over the impact of its decision to reduce the work of a bargaining unit employee, and did not do so, it failed to comply with its contractual obligation. PERC’s finding that the union’s “inaction” was tantamount to a “clear and unmistakable waiver” of its right to bargain is therefore supported by neither the law nor the facts.
I would therefore reverse PERC’s order dismissing the union’s charge against the college with directions that the Commission adopt the recommended conclusions stated in the hearing officer’s order of May 9, 1990.